Good morning, your honors. May it please the court, Mira Hashmaw for appellant and appellee. I'd like to reserve four minutes of my time for rebuttal. The county does not come to this court and lightly invoke the 11th Amendment. We understand that in the general case, the county is not entitled to that immunity just because it's a subdivision of the state. But the law is also clear that any public entity that acts as an arm of the state can be subject to immunity. And in this case, this case specifically targets the state's IHSS program, directly attacks the implementation of a groundbreaking overtime rule, and asks this court and ultimately possibly a judge or a jury to overrule or second-guess decisions that state actors made. Counsel, has there been any appellate court, whether the Ninth Circuit, another appellate court, the Supreme Court, that has ever actually granted 11th Amendment immunity to a county? Not aware of a case that has done it, but this court in Street analyzed the county sheriff's department in the specific role of administering the county jails because in the arm of the state doctrine, there is no per se preclusion. You look at what the governmental actor is engaging in, and you analyze that under the 11th Amendment jurisprudence. Now here, they sued the state of California, but under Aldenby, Maine, they were forced to dismiss it. And so now the county is left with all of the plaintiff's ire focused on the county. The district court acknowledged the unfairness here. The county does not control the payroll function. The IHSS program is dictated from the top down. The welfare code and regulations and CDSS directives tell the counties how to perform their limited localized role. The payroll functions, and this is an FLSA case, so we are focused on payroll, is controlled by the state. The state sends them timesheets. The providers send their timesheets to the state contractor. The state then processes the time cards, and the treasury issues the payment. So the court here acknowledged that unfairness. Counsel, there's no dispute. There's nothing in the record which would suggest that a judgment against the county would be actually paid by the state, correct? Yes. And so even though I understand that you're saying Mitchell controls, we should overrule Mitchell, we should look at other cases. I mean, even if you got to that point and were correct, when I look at cases like, for example, Hess, the Supreme Court very specifically says the biggest factor here is the effect on the state treasury, and you don't have that factor going for you. So even if we agreed that in some theoretical case a county could enjoy 11th Amendment immunity, if the state treasury isn't paying the bill, how could that ever work in L.A.'s favor here? Because what Hess and the cases that come after that say is that you cannot keep giving that factor predominant weight because it's too narrow. It's doing violence to the policy underlying 11th Amendment immunity. If you look at Seminole Trial, the Supreme Court said injunctive release triggers immunity. No coffers at stake there. If you look at the Doe case where the Supreme Court reversed the Ninth Circuit, they said it doesn't matter if at the end of the day the state is not going to feel a financial impact. What matters is that the matter is implicating the state's interest. In the Federal Maritime Commission, just putting a state actor through the process of an administrative hearing, even if there isn't going to be a monetary judgment subject to collection, impugns the integrity, the sovereignty of that entity. The four factors in Hess, if applied here, would weigh decidedly in the county's favor. First of all, this is clearly a state program. It's dictated by the Welfare Code. The District Court agreed even under the Mitchell test, which I believe has been overruled, that that factor weighed in favor of the county. The second factor is control, and that's what's missing under Mitchell. Mitchell's focusing on sort of the status of the entity under state law, and yes, that's still a factor under Hess. But the reason that control has to be part of the 11th Amendment inquiry is because when you are suing an entity whose conduct at issue in a case is controlled by the state, that entity is a proxy for the state, and it's attacking the integrity and the sovereignty of the state. And you don't need to take my word for it. The district judge said in his October 12th order, the State of California's Department of Social Services issued a statement on November 14th, providing that the state would start paying overtime wages in February. Because, I quote, because of the state's control of the timekeeping and payment systems, the county had no ability to pay overtime to the IHSS providers. Counsel, the state could have chosen to try to make its views known to us in this case, right? The state could have decided it wanted to try to file an amicus brief on your behalf, correct? It could have. And it didn't. It did not. But that doesn't mean that this court can ignore the control factor, which under the Supreme Court's decisions are important to analyze. Are we going to be using a federal proceeding to attack a state's actor? And this case is all about the state's decision-making. If you look at the cross-appeal, what they're saying is the state should have started voluntarily paying overtime while the proceedings were in the D.C. Circuit. The state moved too slowly, even though it issued a directive within a week of the mandate from the D.C. Circuit and announced February 1st they were going to do this groundbreaking shift in this program that hundreds of thousands of people are paid by the state under. Counsel, like the district court, I'm sympathetic to the county, but it strikes me that in this regard your beef is with Sacramento, not the plaintiffs. No, it's the 11th Amendment doctrine that acknowledges arm of the state. And the courts have said that there's no public entity that isn't subject to that inquiry in the appropriate case. And here what Hess says is when there are factors that go a couple of different ways, here I think we win the state function, we win the control factor. We don't have the state on the hook for the judgment, but there's financials. But the fact remains you're just not an agency of the state. For purposes of the arm of the state doctrine, you look at what the actor is being sued for. I know. I wrote STREET. I know exactly what it said, and we found that it was not an agency of the state. The sheriffs were not the agencies of the state. Because in that case you were examining what the sheriff was doing, and the issue was there with background checks. And the sheriff's policy on background checks were a product of county policy, not state dictate. Here the state told the counties and everyone in the IHS system how this was going to work. The welfare code directed CDSS, not the county, not anyone else, CDSS on how to implement this rule. And the county couldn't have paid. I mean, the argument here is that we were supposed to construct a payroll system that we don't have, that we don't manage, that we don't control in a matter of weeks and usurp the state's authority and the time frame for its implementation. All of those factors impugn the state's decision-making. And that's why in the second prong of HESS, which plaintiffs don't address, you look at whether allowing this case to go forward will impugn the integrity and the sovereignty of the state. For them to prevail, they are literally going to be attacking every state decision along the way because the county, in the words of the district court, couldn't do it unilaterally, couldn't disobey directives in order to disrupt what was an implementation plan. And we were talking about a State program where even just the basic fundamental aspects of how you pay someone over time, who has the time cards, who reviews them. Ginsburg. Who actually pays the overtime payments? Harrington. Then maybe you would want to bring them in as a party. Harrington. You can't because they are Eleventh Amendment immunity. Harrington. Yes. And that's why we raised indispensable party, Your Honor, as an alternative ground for the motion to dismiss, because it's fundamentally unfair for the county to be defending Maybe you could sue them for indemnity. That's another proceeding. That would be a county suing the state, and that would not be Eleventh Amendment immunity. I'm not sure what doctrines the state would invoke as a defense. I'm sure there's many. But here we have the Arm of the State doctrine that recognized that any actor in a circumstance where the case is targeting conduct that's outside their control can invoke Eleventh Amendment immunity when the factors show on balance that the policy is violating it, if the action proceeds. It's not an ‑‑ I realize that this is an unusual case, but the facts here are undisputed. The dictates here come from state law. The district court itself found the county could not make this decision. Counsel, I'd like to ask you about the second issue in the case, the effective date of the regulation. What case best supports your view that the effective date is something other than the date the regulation became effective, irrespective of what the district court and the District of Columbia did? Why would that affect the effective date? The regulation was vacated before it ever became effective. The district court in D.C. invalidated it as in excess of the Department of Labor's authority under the FLSA. The rule of law that comes from the circuit court is that, no, it's not in excess of their authority. But it didn't retroactively bring to life a regulation that had never become effective. Instead, it said, we're going to expedite our mandate so it can become effective. And the Department of Labor, which I think this court owes deference under Skidmore, in 80 Fed Reg 65646, announced its understanding of its own regulation. The Department of Labor said it was going to execute or it was going to exercise prosecutorial discretion not to begin enforcing it until a particular date. It never said the regulation was not actually valid until the D.C. circuit reversed the D.C. district court, correct? It did in its motion to expedite the mandate, and then it set its 30-day period of non-prosecution to its effective date. So by saying we're not, we have a 30-day non-prosecution policy and saying that 30 days will elapse at November 12th, the Department of Labor was saying that October 13th was the effective date for purposes of the regulation. So you're saying they changed the actual terms of the regulation without going through any formal process to amend it? It never became effective because it was vacated before its effective date. So the Department of Labor recognized that, and so did the D.C. circuit, that employers can't be expected to comply with a regulation that doesn't exist. And so that's why that mandate was expedited, and that's why the Department of Labor announced in its own regulation what the 30-day hold period would be tied to, not a hypothetical effective date that never happened, but the mandate date. And also it extended the prosecution discretionary period to the end of the year because this was such a ground shift for a system that they knew was primarily a state-governed process. I mean, didn't the state of California basically take a chance that the district court ruling was going to be upheld on appeal by the D.C. circuit? There was nothing that prevented the state from deciding we're going to pay now and not risk losing? I don't know, Your Honor, but that's my point under the 11th Amendment. Those are state decisions, and the county shouldn't have to answer them in court. under a federal statute that the court already said in Aldenview, Maine, the state has immunity from in federal and state court for private actions. So imagine the crazy loophole we're creating here. You can't sue the entity that runs the program, dictates the payroll, makes the decision on when and if and how to implement new rules. You can just go through the back door and sue the entity that's told what to do at every step of the payroll system. Well, they're suing the entity who hires them, right? That's not true, Your Honor. They rely on old cases that were dealing with a different IHSS program. They say Burnett and Guerrero tell you that the county is a joint employer under the FLSA. Those cases were dealing with a different structured system. The IHSS program in the county is very different. The county does not employ the providers. The state pays the providers. The recipient dictates the level and nature of the services, and the county's role is primarily a social service role to its constituents who are the recipients. Can you raise that as a defense if this case goes forward? Can I raise? I'm sorry, which? That you're not, do you have a claim you're just not liable at all, no matter, irrespective of the 11th Amendment? Yes. The county does have that defense. But the problem is that we are being forced to litigate a defense in a case that's predicated on the state's decisions, and that's what implicates the arm of the state doctrine. And so that's why we believe the district court erred in denying the motion to dismiss. I'm going to reserve what's left of my time for my rebuttal. All right. Good morning, and may it please the court. Matthew Helland of Nichols-Castor for the plaintiff's appellees. Reversing the district court's sovereign immunity finding would be an extraordinary result for at least two reasons. First, it would require overturning 30-year-old precedent that has been cited by literally hundreds of cases based on a Supreme Court case that itself is 24 years old. And second, it would mark the first time that any circuit court has extended sovereign immunity to a county. I think the court understands our position on the sovereign immunity arguments, and so I just have one point that I want to raise that gets to the joint employment issue. We shouldn't blur the lines here between sovereign immunity and employer status. Those are two different inquiries. Sovereign immunity requires a bright line. The Mitchell test provides the bright line. And an important aspect of the Mitchell test is whether the state will be liable. There's no question here that the state will not be liable on a judgment. The issues about whether the county should be held responsible for what happened go to whether the county is an employer under the FLSA. And if the county is an employer under the FLSA, then it had an obligation to pay overtime. Is that a live issue in the case? It absolutely is a live issue. So the county will be able to make whatever defense it has on that issue? It certainly will, Your Honor. And if there aren't, I'll pause for a moment for questions on the sovereign immunity. Otherwise, I'll move on to the effective date. All right. Move on. On the effective date. The D.C. Circuit's decision in Wheel 2 was no different than any appellate reversal that might be issued by this or any other appellate court. When a court of appeal reverses a district court, the district court opinion is wiped from existence as if it never happened, and the appellate decision applies to all pending cases and all other events. The repeated challenges to the effective date on this particular regulation are somewhat ironic, I would submit, because the Department of Labor took such great pains to provide advanced notice of the regulation and gave the regulated community 15 months to prepare for the effective date. Those employers that relied on the court challenge did so at their own peril, as you recognize, Judge Bennett, with the full knowledge that that challenge might prove unsuccessful. Well, I simply asked a question. I think it was a very intelligent question, Your Honor. The Administrative Procedures Act contemplates a situation where an agency might want to postpone the effective date. That's Section 705 of the Administrative Procedures Act. And they could have done that. And they could have done that. And they didn't. And they didn't. And Your Honor also asked about whether any notice or comment took place in this alleged change of the effective date, and it did not. And so absent notice and comment rulemaking or a request under 705 of the Administrative Procedures Act, the Department of Labor could not change the effective date. Well, but how about the argument that there was that 30-day hold and then making it enforceable on November 12th essentially did change the date? Well, there's a very important aspect of that 30-day hold. The 30-day hold was a notice by the Department of Labor that it was going to exercise its prosecutorial discretion to not bring agency enforcement actions against employers during that 30-day period. It says nothing as to private right of action, which also exists under the FLSA. In fact, in one of the Federal Register passages where the Department announces the 30-day hold, it says it will not prosecute any violations of the regulation during this period. And there could be no violations of the regulation if the regulation was not in effect. So all the Department of Labor was doing was telling the regulated community that it would not enforce as an agency the regulation. And I assume the United States has not chosen to weigh in with an amicus brief in this case. It has not. And so the difference between agency enforcement and a private right of action is very important. Throughout the Federal Register, the Department of Labor recognized that the entire regulated community was relying on this effective date, and it repeatedly said that it was not delaying the effective date, even though it was exercising its discretion not to prosecute as an agency. And I have nothing further to say. All right. Thank you, counsel. I'll give you a couple minutes to respond. Thank you, Your Honor. There's a distinction between a discretionary prosecution decision and an actual period where there is no ability to prosecute. And so that line has been blurred, but it's important here. What the Department of Labor said is that we will not prosecute at all. It's not discretionary, just a mandatory hold for that 30-day period. And if you look back at the history of the statute, they always contemplated there would be a significant gap between the effective date and when anyone would have an action, private or public. The court in Skidmore and this court in Wilshire-Westwood said public and private prosecution of regulatory claims go hand in hand. They can't cite a single case where a circuit court has allowed a private action to take place when the agency charged with enforcing the regulation does not have the ability to prosecute the same claim. They can't because, again, in Skidmore the Supreme Court said those issues should go hand in hand. When they thought the regulation would become effective in January, there was going to be a six-month period of hold from the outset. All of those dates came and went during the D.C. proceedings. So when the Department of Labor said November 12th is the first day we can prosecute, that is also the first date of a private right of action, which the district court rightly concluded. The discretionary period was after that. It went from November 12th to December 31st of 2015. So those distinctions are not to be blurred, although I think plaintiffs would have you do so. With regard to the joint employer defense, the county does have that defense, and it will be able to contest those issues. But the point here is that they're being forced to answer to decisions they didn't make and they had no control, and that is what implicates the Eleventh Amendment. And the Mitchell test is just too myopically focused on the coffers and not the integrity and the sovereignty of the state and its conduct that's going to be subject to a litigation process by a private plaintiff in federal court. And what the court said in Hess and Seminole, in FMC, is that you can't ignore how that itself is a burden that impinges upon the sovereign.  Thank you, counsel. Thank you. Gray and Walker versus County of Los Angeles is submitted.
judges: Wardlaw, Cardone, Bennett